IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE J. TURNER, #125 701, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-904-TFM |
| | ) | [WO] |
| CYNTHIA DILLARD, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff, an inmate incarcerated at the Bullock Correctional Facility in Union Springs, Alabama, files this 42 U.S.C. § 1983 complaint against Cynthia Dillard ["Dillard"], Executive Director of the Alabama Board of Pardons and Paroles. Plaintiff alleges Dillard violated his Eighth and Fourteenth Amendment rights regarding matters associated with the denial of his parole in September of 2013. Plaintiff requests trial by jury and seeks declaratory relief and damages for the alleged violations of his constitutional rights. Doc. 1.

Dillard filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 15, 20, 21. Upon receipt of Dillard's special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 22 at 2. Plaintiff responded to Dillard's report, *see* Doc. 26, but his response does not demonstrate there is any genuine issue of material fact. *See* Doc. 22 at 2. The court will treat Dillard's report as a motion for summary judgment, and resolves this motion in her favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI*

*Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II.  FACTS

Plaintiff is serving a 129-year sentence on his convictions for robbery, second degree robbery, and promoting prison contraband in the second degree. The Circuit Court for Madison County, Alabama, entered judgment against Plaintiff on the robbery convictions in March of 1984.[1] The Circuit Court for Limestone County, Alabama, sentenced Plaintiff to a concurrent term of 15 years imprisonment on the promotion of prison contraband conviction in May of 1990. *Id.* The denial of parole relevant to this cause of action occurred in September of 2013 when parole board members William Wynne, Jr. and Cliff Walker voted to deny Plaintiff parole. Doc. 15, Exh. A, Doc. 20 – Walker Affidavit; Doc. 21, Wynne Affidavit. The board members scheduled Plaintiff's next parole consideration for September of 2018. Doc. 15, Exh. A.

---

[1] *Available at http://www.doc.state.al.us/InmateHistory.aspx*

### III. DISCUSSION

Plaintiff files this § 1983 action claiming Dillard violated his constitutional rights by failing to properly consider him for parole despite his cooperation with prison officials as instructed in a previous notification informing him he had been denied parole. Plaintiff also complains Dillard has never evaluated him or spoken with him about his future plans in order to assess his suitability for parole, she has failed to inform him what he must accomplish to be released on parole, and she has arbitrarily and maliciously discriminated against him to deny him parole. Dillard's actions, Plaintiff claims, have violated his right to due process and equal protection and subjected him to cruel and unusual punishment. Doc. 1.

**A. Official Capacity Claims**

To the extent Plaintiff seeks to sue Dillard in her official capacity, she is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity. *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989). Plaintiff may also not seek a declaratory judgment or injunction against the Alabama Board of Pardons and Paroles, as the State of Alabama, its agencies, and its officials (in their official capacities) are entitled to absolute Eleventh Amendment immunity against these forms of relief. *See Edelman v. Jordan*, 415 U.S. 651, 667 (1974); *Seminole Tribe of Florida v. Florida Dep't of Revenue*, 750 F.3d 1238 (11th Cir. 2014), *cert. denied*, ___ U.S. ____, 135 S. Ct. 947, 190 L.Ed. 2d 829 (2015).[2]

---

[2] Under *Ex parte Young*, 209 U.S. 123 (1908), however, a plaintiff may seek prospective injunctive relief from a state official to compel such official to perform his or her duties in the future in a constitutional fashion. *Stevens v. Gay*, 864 F.2d 113, 114 (11th Cir. 1989) (*citing Edelman*, 415 U.S. at 664–71) ("The Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law.").

**B. Respondeat Superior**

Parole board members William Wynne, Jr., and Cliff Walker are the only individuals who in any manner participated in the decision to deny Plaintiff parole in September of 2013.  Thus, the claims against Dillard regarding the decision to deny Plaintiff parole entitle him to no relief as these claims are based on theories of *respondeat superior* and/or vicarious liability. Supervisory personnel, however, cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or based on vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, Dillard is liable for the challenged conduct of her subordinates only if she "personally participate[d] in the alleged unconstitutional conduct

or [if] there is a causal connection between [her] actions . . . and the alleged constitutional deprivation[s]." *Cottone*, 326 F.3d at 1360 (citation omitted).

Here, Plaintiff presents no evidence which creates a genuine issue of disputed fact regarding the claims lodged against Dillard. The only evidentiary materials filed in this case which could be presented at trial demonstrate that Dillard did not participate in or have any involvement with the decision to deny Plaintiff parole. Thus, Dillard can be held liable for the actions of parole board members Wynne and Walker only if their actions bear a causal relationship to the purported violations of Plaintiff's constitutional rights and federal law.

To establish the requisite causal connection and therefore avoid entry of summary judgment for Dillard, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [Dillard] on notice of the need to correct the alleged deprivation, and [she] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Dillard] directed [Parole Board members Wynne and Walker] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates Plaintiff fails to meet this burden.

The record before the court contains no evidence to support an inference that Dillard directed Wynne and Walker to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Plaintiff presents no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Dillard failed to take corrective action. Finally, the challenged actions did not occur under a policy enacted by Dillard. The requisite causal

connection, therefore, does not exist between the actions challenged by Plaintiff and the conduct of Dillard and liability under the custom or policy standard is not warranted.

**C. Due Process Claim**

Plaintiff seeks relief for an alleged lack of due process afforded to him during the parole consideration process which resulted in him being denied parole in September 2013. Specifically, Plaintiff alleges language in a letter provided to him by Dillard upon a previous denial of parole created a liberty interest in being released on parole based on his cooperation with prison officials as such statement represents a "'[c]rystallized expectation' of release [on parole]."[3] Doc. 26 at 2-3, Turner Affidavit; Doc. 1 at 3. Plaintiff also challenges Dillard's failure to provide him with notice of what he must accomplish to achieve parole other than to cooperate with prison officials. Doc. 26, Turner Affidavit.

Dillard denies violating any of Plaintiff's constitutional rights and argues that under Ala. Code § 15-22-36 "no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of dues assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society." Doc. 15 at 11. The language referenced in the letter submitted by Plaintiff to support his claim does not create a right to parole if the prisoner cooperates with prison officials and does not state that if he "cooperate[d] with prison officials [] [he] would be released." Doc. 26 at 2; *see also* Exh. AA. Plaintiff simply has no liberty interest created by the Alabama parole statues or the language in the parole denial letter.

---

[3] The letter to which Plaintiff refers expresses the Parole Board's "hope" that Plaintiff "will fully cooperate with prison authorities in order that [he] may receive the best benefits that can be afforded." Doc. 26, Exhs. AA, B, C.

7

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole.... When the statute is framed in discretionary terms there is not a liberty interest created.... Alabama parole statutes do not create a liberty interest [in parole]." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process....' ... [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers*, 691 F.2d 487 (11th Cir.1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987). The cursory language in Plaintiff's letter of parole denial regarding a "hope" of compliance with correctional officials so an inmate "may" position himself to receive available benefits does not create a constitutionally protected interest in parole. *See* Doc. 26, Exh. AA; *see also* Exhs. B, C.

To the extent Plaintiff contends that applicable statutes and regulations create a protected liberty interest in the procedures related to parole consideration, he is likewise entitled to no relief as this claim is foreclosed by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982). In *Slocum*, the Eleventh Circuit deemed such a "unique theory . . . without merit." *Id*. at 942. The relevant portion of the Court's opinion reads :

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration. Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...." If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards. Petitioner's unique theory

8

>is without merit. Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].
>
>*Slocum*, 678 F.2d at 941–942.

The foregoing makes clear that Plaintiff possesses no liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Bd. of Pardons and Paroles*, 222 Fed. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941–942; *Thomas*, 691 F.2d at 488–489. Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir.1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488–489, or the parole consideration process. *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole constitutes no violation of due process).

But even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. Dillard's evidentiary material submitted to support her dispositive motion reflects that parole board members Wynne and Walker acted in accordance with the Constitution, federal law, state law and applicable administrative regulations when they denied Plaintiff parole. Their affidavits reflect that the decision to deny Plaintiff parole was based on their determination he did not present an acceptable risk for release on parole.[4] The decision of the parole board members demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Plaintiff has, therefore, presented no evidence indicating arbitrary or capricious actions by the Alabama Board of Pardons and Paroles or its officials. Dillard is entitled to summary judgment on Plaintiff's due process claims.

**D. Cruel and Unusual Punishment**

Plaintiff challenges as violating his right to be free from cruel and unusual punishment the failure of Dillard and/or members of the Parole Board to talk with and/or evaluate him regarding what he must accomplish to be paroled rather than basing his future simply on their feelings or

---

[4] Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted. Ala. Code § 15–22–24(a). As explained, the law further gives the parole board total discretion in determining whether an inmate should be granted parole. *See* Ala. Code § 15–22–26. The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489. The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489. Here, no evidence has been presented which reflects flagrant or unauthorized action by the parole board or its members warranting interference by this court.

predictions regarding his suitability for parole. Docs. 1, 26. This claim entitles Plaintiff to no relief.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id*. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). Failure of parole board officials to evaluate an inmate for parole and/or speak with him/her does not rise to the level of an Eighth Amendment violation as such conduct amounts to "merely a disappointment rather than a punishment of cruel and unusual proportions." *Damiano v. Florida Parole and Probation Comm'n*, 785 F.2d 929, 933 (11th Cir. 1986). Dillard's dispositive motion on this claim is due to be granted.

**E. Equal Protection**

Plaintiff alleges a violation of his right to equal protection the fact that a victim(s), victim advocates, prosecutors, and inmates in community programs may attend parole hearings but he may not. Plaintiff also complains that he has witnessed the grant of parole to white inmates returned to prison on technical parole violations like he was and yet he has not been granted parole. Docs. 1, 26.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed . . . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974) (footnote omitted) (citations omitted); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not

11

require all persons to be treated either identically or equally."). To present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections,* 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote omitted) (citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).

In a case such as this one, an inmate's conclusory allegations are insufficient as exceptionally clear proof of discrimination is required. *Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause. *Sweet*, 467 F.3d at 319; *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment or even arbitrary

administration of state power are insufficient to establish discrimination violative of equal protection).

Dillard denies violating Plaintiff's constitutional rights and parole board members Walker and Wynne deny discriminating against Plaintiff based on race or any other constitutionally protected interest in their decision to deny him parole. Doc. 15, Dillard Affidavit; Doc. 20; Doc. 21. Since this case is before the court on a properly supported motion for summary judgment, Plaintiff must produce specific, substantial evidence he was intentionally discriminated against due to his race. *Arlington Heights*, 429 U.S. at 265. Purposeful discrimination can be shown either by direct evidence, *i.e.*, admissions of the defendant, or indirectly by way of circumstantial evidence. *Id*. at 266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [her] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Instead, a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendant. *Id*. at 249.

Regarding Plaintiff's equal protection claim which relies exclusively on him being denied parole while white inmates also returned to prison on technical parole violations have received parole, he is entitled to no relief. Even if Plaintiff and the white inmates he alleges received more favorable treatment were similarly situated, he has presented no evidence, probative or otherwise, that racial discrimination or purpose constituted a motivating factor regarding the conduct about which he complains. The circumstantial evidence presented and inconsistency identified by Plaintiff warrant no inference of discriminatory intent. A showing of disparate impact upon two racially diverse inmates is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).

The arbitrary application of administrative rules likewise does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.

Plaintiff makes the conclusory legal assertion that the actions about which he complains resulted from racial discrimination because similarly situated white inmates were not treated in the same manner. The evidentiary materials filed by Dillard establish that Plaintiff's treatment was based on facts and circumstances unrelated to his race and was not the result of purposeful discrimination. *See* Doc. 15, Exh. A; Docs. 20, 21. As explained, "[e]xact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment." *Norvell v. State of Ill.*, 373 U.S. 420, 423 (1963). Here, other than Plaintiff's conclusory allegations that the actions about which he complains were intentionally discriminatory, the record is devoid of any proof that the alleged conduct occurred because he is black.

Regarding Plaintiff's allegations of discrimination because he may not attend his parole hearings but other individuals such as the victim, victim advocates, the prosecutor, and inmates in community programs may, Plaintiff must show he was similarly situated with another inmate treated more favorably and that his discriminatory treatment arose from a constitutionally protected interest such as race or some other constitutionally protected basis. *Jones*, 279 F.3d at 946-47. Plaintiff must also demonstrate an intentional or purposeful discrimination. *Snowden*, 321 U.S. at 8; *E & T Realty*, 830 F.2d at 1113–14.

Here, what Plaintiff complains of is his disappointment in not attending his parole hearing. Plaintiff regards this conduct as actionable unequal treatment. As explained, however, a disparate treatment claim requires establishing that similarly situated inmates were not similarly treated and

that parole officials engaged in invidious discrimination based on race, religion, national origin, poverty, or some other constitutionally protected interest. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection Clause "simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike."); *Jones*, 279 F.3d at 947. Plaintiff identifies no similarly situated inmates who received more favorable treatment regarding the individuals who may attend parole hearings and, thus, his "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1318-1319. Plaintiff has generally alleged discrimination regarding this claim but has identified no specific facts that allow the court to make any plausible inference that the treatment he allegedly received was based on a constitutionally protected interest. *See Hammond*, 669 F. Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution . . ., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently . . . [T]here is *no* evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff . . . The plaintiff has offered the Court nothing on which to base his equal protection claim. Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

The record is devoid of evidence that Dillard or any other parole official acted due to purposeful discrimination. Under applicable federal law, the allegations made by Plaintiff are

insufficient to show an equal protection violation and Dillard is entitled to summary judgement on this claim. *Celotex Corp.*, 477 U.S. 317.

A separate order follows.

DONE, this 19th day of January 2017.

/s/Terry F. Moorer
TERRY F.  MOORER
UNITED STATES MAGISTRATE JUDGE